# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 1:06-CR-0199-10** |
| | : | |
| v. | : | **(Judge Conner)** |
| | : | |
| **ANTONIO AVILA** | : | |

## MEMORANDUM

Presently before the court are two motions filed by defendant Antonio Avila (hereinafter "defendant" or "Avila"). The first motion (Doc. 951) seeks to sever three counts of the third superceding indictment (Doc. 828) for a separate trial. The second motion (Doc. 952) requests dismissal of one of these counts. For the reasons that follow, both motions will be denied.

**I.    Factual Allegations**

The third superceding indictment contains eight counts against various permutations of the ten defendants named therein. Counts 1 and 2 charge all defendants with conspiracy to distribute various controlled substances and with distribution and possession with the intent to distribute cocaine hydrochloride. Avila appears in both of these counts. Count 4 contains a forfeiture charge identifying fourteen articles of property that all defendants allegedly derived from the substantive drug-trafficking offenses.

Counts 5, 7, and 8 allege charges associated with an escape attempt by Avila and co-defendant Fernando Beltran ("Beltran"). Count 5 contains the escape charge, Count 7 advances a wire fraud offense arising from Avila and Beltran's

alleged attempt to bribe a prison official, and Count 8 propounds a charge for use of interstate communication facilities in aid of bribery.[1]

Avila moves to sever Counts 5, 7, and 8 (hereinafter "the escape-related charges") from the offenses appearing in Counts 1, 2, and 4 (hereinafter "the underlying drug offenses").  He also moves to dismiss the wire fraud charge on the ground that it improperly duplicates the escape charge.  The parties have fully briefed both motions, which are now ripe for disposition.

## II. Motion to Sever

Avila advances two grounds for severance.  First, he contends that the charges for escape, wire fraud, and use of interstate facilities in aid of bribery were improperly joined with the drug-trafficking, conspiracy, and forfeiture charges.  Second, he argues that the court should sever the escape-related charges notwithstanding the propriety of joinder because he will suffer prejudice if all counts of the indictment proceed to trial simultaneously.  The court will address these issues *seriatim*.

### A. Joinder of Offenses

"There is a preference in the federal system for joint trial of defendants who are indicted together."  Zafiro v. United States, 506 U.S. 534, 537 (1993).  Rule 8 of

---

[1] Count 3 charges two of Avila's co-defendants with distribution and possession with intent to distribute marijuana, and Count 6 asserts a charge against co-defendant Hilaria Espinosa-Fuerte for assisting with Avila and Beltran's escape attempt.  Espinosa-Fuerte pled guilty to Count 6 on March 26, 2009.  (See Doc. 1025.)

the Federal Rules of Criminal Procedure reflects this liberal joinder policy, allowing the government to advance multiple charges against multiple defendants in a single indictment. United States v. Brown, No. 1:CR02-146-02, 2002 WL 32739530, at *3 (M.D. Pa. Dec. 17, 2002) (quoting United States v. Bullock, 71 F.3d 171, 174 (5th Cir. 1995)) ("Joinder of charges is the rule rather than the exception[,] and Rule 8 is construed liberally in favor of initial joinder."). Rule 8(a) permits joinder of several counts against a single defendant if the counts "are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." FED. R. CRIM. P. 8(a). Similarly, Rule 8(b) authorizes joinder of multiple defendants who "are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." FED. R. CRIM. P. 8(b). Rule 8(b) provides the applicable standard when one individual appearing in a multi-defendant indictment challenges the joinder of the charges against him or her. United States v. Irizarry, 341 F.3d 273, 287 (3d Cir. 2003).[2]

---

[2] The parties dispute whether Rule 8(a), governing joinder of offenses, or Rule 8(b), governing joinder of defendants, applies to the instant motion. Defendant requests severance only of the escape-related charges and apparently concedes that he is properly joined in the underlying drug offenses. (Doc. 951 at 2-3.) The government therefore characterizes his motion as a challenge to joinder of offenses under Rule 8(a). (Doc. 960 at 8 n.7.) However, Rule 8(a) applies exclusively to matters involving a single defendant. Irizarry, 341 F.3d at 287; see also United States v. Somers, 496 F.2d 723, 729 n.8 (3d Cir. 1974). In a multiple-defendant case, the standard for joinder of offenses and joinder of defendants merges into a single inquiry governed by Rule 8(b). Irizarry, 341 F.3d at 287; United States v. Espinosa, No. Crim.A. 07-482, 2009 WL 197553, at *2 (E.D. Pa. Jan. 27, 2009); United States v. Delle Donna, 552 F. Supp. 2d 475, 495 (D.N.J. 2008).

3

The government may join multiple offenses in a single indictment if they "arise out of a common series of acts or transactions." United States v. Brown, No. Crim.A. 07-0296, 2008 WL 161146, at *4 (E.D. Pa. Jan. 16, 2008) (citing United States v. Eufrasio, 935 F.2d 553, 570 (3d Cir. 1991)); see also United States v. Gorecki, 813 F.2d 40, 41-42 (3d Cir. 1987). The movant bears the burden of establishing improper joinder. Brown, 2002 WL 32739530, at *3; see also United States v. DeLuca, 137 F.3d 24, 36 n.12 (1st Cir. 1998). A court addressing the propriety of joinder may consider the contents of the indictment, representations set forth in pretrial filings, and any offers of proof submitted by the government. See Eufrasio, 935 F.2d at 567; United States v. McGill, 964 F.2d 222, 242 (3d Cir. 1992).[3]

Under these principles, this court has upheld joinder of an escape charge with another offense that is "a logical predicate to [the] alleged escape, and the escape, in turn, the culminating act 'in the same series of acts.'" United States v. Walker, No. 1:07-CR-00263, 2008 WL 2247136, at *3 (M.D. Pa. May 30, 2008) (quoting FED. R. CIV. P. 8(b)). In United States v. Walker, law enforcement officials

---

[3]The government's brief in opposition describes the evidence it intends to present at trial in support of the escape-related charges. (See Doc. 960 at 4-7.) The court will construe this material as an offer of proof for purposes of the instant motion. The court has also reviewed wiretap transcripts (Doc. 878) submitted by Beltran in support of a severance motion that was nearly identical to Avila's pending request. United States v. McGlory, 968 F.2d 309, 340 (3d Cir. 1992) (requiring a district court to review the entire record of a case when deciding a motion to sever under Rule 14); McGill, 964 F.2d at 242. The court denied Beltran's motion on December 3, 2008. (See Doc. 925.)

4

apprehended two co-defendants on drug possession and conspiracy charges common to both of them. Id. at *1. One of the defendants escaped custody and was subsequently arrested and charged with additional drug offenses committed during his flight from prosecution. Id. The government obtained one indictment setting forth all charges, and the non-escapee defendant moved to sever the escape and drug offenses unique to his co-defendant. Id. The court denied the motion, concluding that the actions of both defendants furthered a single drug conspiracy and that the escape resulted from the continuous, foreseeable progression of events related to that conspiracy. Id. at *3. Hence, an escape charge and related offenses may be joined with the drug conspiracy counts from which they spring.

Courts of appeals addressing similar factual scenarios have likewise concluded that the government may charge escape-related crimes alongside underlying offenses if the two are closely related to one another. See, e.g., United States v. Turner, 134 F. App'x 17, 22 (6th Cir. 2005) ("It is well established that a charge of escape or bail jumping and the underlying substantive offense are sufficiently connected to permit joinder under [Rule] 8(a)."). This nexus depends upon the temporal proximity between the offenses, whether the defendant escaped to evade prosecution for the underlying offense, and whether the defendant was in custody for the underlying offense at the time of the flight. See, e.g., United States v. Coyazo, No. 98-5117, 1999 WL 999707, at *2 (10th Cir. Nov. 4, 1999) (concluding that an escape offense may be joined with an underlying offense if the two charges are "related in time, the motive for the flight was avoidance of prosecution, and the

5

defendant's custody stemmed directly from the underlying substantive charges"); United States v. Gabay, 923 F.2d 1536, 1540 (11th Cir. 1991) (holding same with respect to bond jumping); United States v. Peoples, 748 F.2d 934, 936 (4th Cir. 1981) (same). Moreover, if the defendant allegedly escaped in furtherance an overarching conspiracy, the existence of the conspiracy warrants joinder of the escape with the associated offenses. Walker, 2008 WL 2247136, at *4; see also United States v. Thornton, 1 F.3d 149, 152-53 (3d Cir. 1994) (holding that all overt acts performed in furtherance of a conspiracy may be charged in a single indictment regardless of whether all defendants actually participated in each act). The same principles permit joinder of offenses associated with an attempted escape undertaken in furtherance a conspiracy. See, e.g., United States v. Lane, 474 U.S. 438, 447 (1986) (stating that all offenses performed within the ambit of a conspiracy may be charged in a single indictment); Eufrasio, 935 F.2d at 567.

Turning to the instant case, the escape-related charges against Avila are properly joined with the other counts of the indictment. The indictment alleges that Avila and his co-defendants participated in a conspiracy to distribute cocaine hydrochloride, cocaine base, and marijuana. (Doc. 828 at 1; Doc. 960 at 4-5.) Avila and Beltran regularly received wholesale quantities of cocaine hydrochloride on behalf of the conspiracy. (Doc. 960 at 5.) They were arrested on April 22, 2006 after consummating such a transaction with a government informant. (Id.) Under Avila's direction, the informant delivered approximately five kilograms of cocaine

6

hydrochloride to Beltran, after which officers took both defendants into custody. (Id.)

Officials later transferred them to pretrial detention in Perry County Prison, where they encountered a prison employee ostensibly sympathetic to their situation. (Id. at 5-6.) The employee was, in fact, cooperating with law enforcement officials. (Id. at 6.) Defendants Avila and Beltran requested that the employee procure a cellular telephone for them,[4] and the employee agreed to do so in exchange for $3,000. (Id.) They arranged for Beltran's sister and now-convicted co-defendant Hilaria Espinosa-Fuerte ("Espinosa-Fuerte") to deliver the money to a post office box designated by the employee-informant, where it was seized on October 29, 2007. (Id.; Doc. 828 at 6.) The defendants received the phone, believing the transaction a success. Avila and Beltran used the phone to plan their escape and to discuss the flow of drugs through the conspiracy.

They later solicited the same prison employee to arrange the escape for them. (Doc. 960 at 6.) The employee agreed to cooperate in exchange for $40,000. (Id. at 7 & n.6.) Using the phone, Beltran instructed Espinosa-Fuerte to send the funds to the same post office box used for the cellular phone transaction. (Id. at 6-7.) Avila repeatedly called co-conspirator Robertina Tapia ("Tapia") to discuss the escape and to describe his planned return to Mexico after the jailbreak. (Doc.

---

[4]Defendants Avila and Beltran, who are not fluent in English, relied upon another inmate not named in the indictment as a translator during their conversations with the employee. (Doc. 960 at 6.)

7

878, Ex. A at 13-15, 17; Doc. 878, Ex. B at 12.)  On one occasion, Avila also called an unknown female, who agreed to send him a small sum of money to aid the flight attempt.  (Doc. 878, Ex. B at 13.)

Espinosa-Fuerte eventually shipped the $40,000 bribe along with an additional $1,000 to fund Avila and Beltran's trek to Mexico, and law enforcement officials seized it at the post office box on December 3, 2007.  (Doc. 960 at 7 & n.6; Doc. 828 at 6.)  A subsequent search of Espinosa-Fuerte's residence produced drug ledgers and firearms, and following the search she admitted to sending the cash in order to facilitate the later-foiled escape.  (Doc. 960 at 7.)

This evidence demonstrates that the drug conspiracy tainted every aspect of the alleged escape attempt, wire fraud, and bribery of the prison employee. Espinosa-Fuerte used funds earned by the conspiracy to provide Avila and Beltran with a cellular telephone and to facilitate their escape.  They utilized the phone to discuss drug trafficking, plan a return to Mexico, and communicate instructions to Espinosa-Fuerte.  The mailing of the $44,000 and duo's thwarted escape are therefore the "culminating act[s]" in a series of events that furthered the underlying drug conspiracy using ill-gotten profits derived therefrom.  Walker, 2008 WL 2247136, at *3.  Accordingly, the escape and forfeiture charges are properly joined with the remaining counts of the indictment under Rule 8(b).

**B.     Severance of Counts**

Properly joined charges may nevertheless be severed pursuant to Rule 14 if the joinder "appears to prejudice a defendant or the government." FED. R. CRIM. P. 14(a). A court should sever charges "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Zafiro, 506 U.S. at 539; United States v. Silveus, 542 F.3d 993, 1005-06 (3d Cir. 2008). "[A] defendant is not entitled to a severance merely because evidence against a co-defendant is more damaging than evidence against the moving party." United States v. Lore, 430 F.3d 190, 205 (3d Cir. 2005) (quoting United States v. Somers, 496 F.2d 723, 730 (3d Cir. 1974)). Rather, the defendant must demonstrate that "clear and substantial prejudice" will result if all counts of the indictment are tried jointly. United States v. Davis, 397 F.3d 173, 182 (3d Cir. 2005). Clear and substantial prejudice exists if the jury would be unable "to compartmentalize the evidence as it relates to separate defendants in view of its volume and limited admissibility." Lore, 420 F.3d at 205 (quoting Davis, 397 F.3d at 182). Mere allegations of prejudicial joinder are insufficient to warrant severance, United States v. Urban, 404 F.3d 754, 775 (3d Cir. 2005), and separation of charges may be inappropriate if limiting instructions from the court can adequately manage the possibility that a jury might misuse evidence, Zafiro, 506 U.S. at 539 ("When the risk of prejudice is high, a district court is more likely to determine that separate trials are necessary, but . . . less drastic measures,

9

such as limiting instructions, often will suffice to cure any risk of prejudice."); Brown, 2002 WL 32739530, at *4.

In the instant matter, Avila's brief explains that joinder may result in prejudice if it forecloses a defendant's opportunity for full cross-examination, impairs the defendant's ability to present an individual defense, results in a denial of the Sixth Amendment right of confrontation, creates a conflict of interest among multiple defense counsel, or causes the jury to rely upon evidence for an improper purpose. (Doc. 953 at 5 (quoting United States v. Douglass, 780 F.2d 1472, 1478 (9th Cir. 1986)). However, he fails to explain how any of these potential hazards impair his defense *in this particular case*.

Absent elucidation by defendant, the court ascertains no manner in which joinder prejudices Avila's defense. Avila has identified no witness whom he could examine more persuasively in a separate trial, and he has separate counsel from each of his codefendants. The Clerk of Court and the Federal Public Defender, who jointly administer the court's Criminal Justice Act Plan, have undertaken rigorous efforts to ensure that Avila and his co-defendants possesses conflict-free counsel.

Moreover, evidence of the escape-related charges will be admissible at trial for the underlying drug offenses regardless of the disposition of the instant motion. Avila and Beltran allegedly attempted to escape both as a result of the drug conspiracy and in furtherance of it. As such, the government will likely introduce evidence of these offenses regardless of severance because they qualify as overt acts

performed in furtherance of the conspiracy. This evidence will require jurors to evaluate the interrelationship between the offenses and consider whether the escape was a component of the larger drug conspiracy. It makes little sense to hold a separate trial on the escape charges that would simply duplicate portions of the evidentiary record presented at the trial for the underlying drug offenses.

A single trial is likewise appropriate because jurors will easily distinguish between the evidence applicable to the drug charges and that which is probative of the escape-related charges. Whereas the drug offenses developed over the course of many months and implicate all defendants, the escape-related charges implicate only Avila and Beltran and occurred during a discrete period of time in late 2007. They pertain only to the seizures at the Harrisburg post office and the events at the Perry County Prison. A jury can readily separate these facts from those associated with the broader conspiracy, removing the risk that jurors may convict Avila by inappropriately relying upon evidence applicable only to his co-defendants. Limiting instructions regarding the proper use of evidence are sufficient to remedy any lingering risk of evidence misuse, and defendant remains free to request such instructions. See Zafiro, 506 U.S. at 539.

Moreover, Avila has identified no evidence applicable to the underlying drug offenses that would result in actual, substantial prejudice to his rights at trial. The government's wiretap evidence documents numerous conversations in which Avila discussed the status of the escape plans with Tapia and two unknown females, one of whom planned to send Avila money for the hegira to Mexico. (Doc. 878, Ex. A at

11

13-15; Doc. 878, Ex. B at 12-13.) According to a conversation between Beltran and Espinosa-Fuerte, co-conspirator Amauris Sanchez—allegedly a major supplier of cocaine to the drug conspiracy—intended to rendevous with the escapees and flee to Mexico with them. (Doc. 878, Ex. A at 8-9.) Espinosa-Fuerte obtained funds from the drug conspiracy to bribe the prison employee. (Doc. 960 at 5-7.)

These conversations illustrate the interrelationship between Avila and Beltran's escape attempt and the drug conspiracy. The wiretaps support inferences that the conspiracy furnished the funds for the escape, that Avila desired to flee to Mexico, and that the purpose of the escape was to avoid criminal liability for the underlying drug offenses. A jury may reasonably conclude that this evidence is probative both of the escape and of the overt acts undertaken in furtherance of the overarching conspiracy. Hence, Avila has not identified any evidence pertinent to the underlying drug offenses that would result in clear and substantial prejudice to him if presented during a joint trial.

Defendant's motion for severance provides a quintessential example of the conclusory allegations of prejudice that are insufficient to obtain severance, and he has failed to carry the "heavy burden" borne by a proponent of severance. Urban, 404 F.3d at 775 ("[D]efendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials." (quoting Zafiro, 506 U.S. at 540)). Avila has therefore failed to establish prejudicial joinder of offenses, and his motion to sever will be denied.

### III. <u>Motion to Dismiss</u>

Avila moves to dismiss Count 7 of the third superceding indictment (Doc. 828), which contains the wire fraud charge. He contends that Count 7 improperly duplicates the escape charge set forth in Count 5 of the indictment.

#### A. <u>Standard of Review</u>

Rule 12(b)(3)(B) of the Federal Rules of Criminal Procedure permits a defendant to seek dismissal for any "defect in the indictment" prior to trial. FED. R. CRIM. P. 12(b)(3)(B). The United States Court of Appeals for the Third Circuit has summarized the standard for evaluating the sufficiency of an indictment as follows:

> We deem an indictment sufficient so long as it (1) contains the elements of the offense intended to be charged, (2) sufficiently apprises the defendant of what he must be prepared to meet, and (3) allows the defendant to show with accuracy to what extent he may plead a former acquittal or conviction in the event of a subsequent prosecution. Moreover, no greater specificity than the statutory language is required so long as there is sufficient factual orientation to permit the defendant to prepare his defense and to invoke double jeopardy in the event of a subsequent prosecution.

<u>United States v. Kemp</u>, 500 F.3d 257, 280 (3d Cir. 2007) (citations and internal quotation omitted). Dismissal under Rule 12(b)(3) "may not be predicated upon the insufficiency of the evidence to prove the indictment's charges." <u>United States v. DeLaurentis</u>, 230 F.3d 659, 661 (3d Cir. 2000). Accordingly, the court must assume that the allegations in the indictment are true. <u>United States v. Besmajian</u>, 910 F.2d 1153, 1154 (3d Cir. 1990). The court will review the indictment "using a common sense construction," <u>United States v. Hodge</u>, 211 F.3d 74, 76 (3d Cir. 2000), "examine the [statutes at issue] as applied to the facts as alleged in the indictment,

13

and determine whether the defendant's conduct, as charged, 'reflect[s] a proper interpretation of criminal activity under the relevant criminal statute[s].'" United States v. Delle Donna, 522 F. Supp. 2d 475, 483 (D.N.J. 2008) (quoting United States v. Wecht, No. 06-0026, 2007 WL 3125096, *5 (W.D. Pa. Oct. 24, 2007)); see also United States v. Bryant, No. 07-0267, 2008 WL 2315720, at *1-2 (D.N.J. June 5, 2008).

### B. **Discussion**

Avila contends that Counts 5 and 7 of the indictment are multiplicitous because they allegedly charge him with the same escape crime and arise from the same factual allegations. An indictment is multiplicitous if it "charges the same offense in two or more counts and may lead to multiple sentences for a single violation." United States v. Pollen, 978 F.2d 78, 83 (3d Cir. 1992) (holding that multiplicitous indictments violate the Double Jeopardy Clause); see also Hodge, 211 F.3d at 78. The court must perform two inquiries when evaluating multiplicity. First, the court determines whether each charge necessitates proof of a fact not required by the other counts. Blockburger v. United States, 284 U.S. 299, 304 (1932); United States v. Stanfa, 685 F.2d 85, 87 (3d Cir. 1982); United States v. Carter, 576 F.2d 1061, 1064 (3d Cir. 1978). Second, the court must consider whether Congress intended to punish each of the charged offenses separately. United States v. Lacy, 446 F.3d 448, 457 (3d Cir. 2006); Stanfa, 685 F.2d at 87.

In the present case, Count 5 of the indictment charges Avila with escape in violation of 18 U.S.C. § 751(a)[5] while Count 7 charges him with wire fraud in violation of 18 U.S.C. § 1343.[6] To convict a defendant for escape, the government must prove that (1) the defendant was in custody under the authority of the Attorney General, (2) the custody resulted from a conviction for any federal crime or an arrest for a felony offense,[7] (3) the defendant attempted to leave custody

---

[5]Section 751(a) of Title 18 punishes escapes and attempted escapes from federal custody:

> Whoever escapes or attempts to escape from the custody of the Attorney General . . . or from any custody under or by virtue of any process issued under the laws of the United States . . . shall, if the custody or confinement is by virtue of an arrest on a charge of felony, or conviction of any offense, be fined under this title or imprisoned not more than five years . . . .

18 U.S.C. § 751(a).

[6]Section 1343 of Title 18, which governs wire fraud, provides that

> [w]hoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both. . . .

18 U.S.C. § 1343.

[7]A defendant in pretrial custody for an alleged misdemeanor may also be charged with escape; however, the nature of the underlying crime affects the statutory maximum term of imprisonment. A defendant charged with a felony faces up to five years of incarceration for escape whereas the maximum is one year for an alleged misdemeanant. See 18 U.S.C. § 751(a).

15

without authorization, and (4) the defendant acted knowing that he was leaving custody without authorization.  18 U.S.C. § 751(a); United States v. Bailey, 444 U.S. 394, 407-08 (1980); United States v. Rosa-Ortiz, 348 F.3d 33, 37 (1st Cir. 2003).  A conviction for wire fraud requires proof that defendant (1) knowingly and willfully participated in a scheme to defraud through false or fraudulent representations, (2) acted with the specific intent to defraud, and (3) advanced the scheme by transmitting wire communications in interstate commerce.  18 U.S.C. § 1343; United States v. Antico, 275 F.3d 245, 261 (3d Cir. 2001).

Each of these crimes requires proof of facts that the other does not implicate.  For example, escape requires that defendant attempt to abscond from custody while wire fraud necessitates use of a communications device.  Neither of these facts is pertinent to the other crime.  The discrete nature of each crime indicates that Congress intended to punish them separately.  Accordingly, Counts 5 and 7 of the third superseding indictment are not multiplicitous, and the motion to dismiss will be denied.

**IV.    Conclusion**

The government has properly joined the escape-related charges with the underlying drug offenses.  Avila not established that joinder will result in clear and substantial prejudice to his rights at trial.  He has also failed to demonstrate that the escape and wire fraud charges are multiplicitous.  Accordingly, his motions to sever and to dismiss will be denied.

16

An appropriate order follows.

       S/ Christopher C. Conner
      CHRISTOPHER C. CONNER
      United States District Judge

Dated:      April 28, 2009

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 1:06-CR-0199-10** |
| | : | |
| v. | : | **(Judge Conner)** |
| | : | |
| **ANTONIO AVILA** | : | |

## **ORDER**

AND NOW, this 28th day of April, 2009, upon consideration of defendant's motion to sever (Doc. 951) the charges for escape, wire fraud, and use of interstate facilities in aid of bribery, and upon further consideration of his motion to dismiss (Doc. 952) the wire fraud charge, and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that:

1. The motion to sever (Doc. 951) is DENIED.

2. The motion to dismiss (Doc. 952) is DENIED.

   S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge